| | |
|---|---|
| Deborah D. Williamson<br>TX State Bar No. 21617500<br>Dwilliamson@dykema.com<br>Patrick L. Huffstickler<br>TX State Bar No. 10199250<br>phuffstickler@dykema.com<br>DYKEMA GOSSETT PLLC<br>112 E. Pecan St., Suite 1800<br>San Antonio, Texas 78205<br>Telephone: (210) 554-5500 | Alexandria R. Rahn<br>TX State Bar No. 24110246<br>arahn@dykema.com<br>DYKEMA GOSSETT PLLC<br>1717 Main Street, Suite 4200<br>Dallas, Texas 75201<br>Telephone: (214) 462-6400<br><br>Scott C. Skelton<br>Skelton Slusher Barnhill Watkins Wells PLLC<br>1616 S. Chestnut<br>Lufkin, Texas 75901<br>(936) 632-2300<br>(936) 635-8407<br>sskelton@ssbww.law |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **In re:**<br><br>**Lion Star Nacogdoches Hospital, LLC,**<br><br>    **Debtor.** | § §<br>§<br>§<br>§<br>§<br>§<br>§ | **CHAPTER 11**<br><br>**Case No. 23-43535-mxm11** |

**NACOGDOCHES COUNTY HOSPITAL DISTRICT'S LIMITED AND PRELIMINARY
OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION
FINANCING ON A SECURED, SUPERPRIORITY BASIS; (II) AUTHORIZING THE
DEBTOR TO USE CASH COLLATERAL; (III) SCHEDULING A FINAL HEARING;
(IV) MODIFYING THE AUTOMATIC STAY, AND
<u>(V) GRANTING RELATED RELIEF</u>**

**TO THE HONORABLE U.S. BANKRUPTCY JUDGE MARK X. MULLIN:**

Nacogdoches County Hospital District ("<u>NCHD</u>" or the "<u>District</u>"), by and through its undersigned counsel, files this its *Limited and Preliminary Objection to Debtor's Emergency Motion for Interim and Final Orders (I) Authorizing the Debtor to Obtain Postpetition Financing on a Secured Superpriority Basis; (II) Authorizing the Debtor to Use Cash Collateral;*

*(III) Scheduling a Final Hearing; (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 11 and 12] (the "Financing Motion"). In support of the Objection, the District respectfully states as follows:

1. Lion Star Nacogdoches Hospital, LLC (the "Debtor" or "Lion Star") and the District entered into a *Hospital Asset Purchase Agreement* (the "APA") and a *Hospital Facility Lease Agreement* (the "Lease") both effective as of the Closing Date, July 14, 2021. The Lease and the APA are integrated agreements.[1] A default in the APA constitutes an Event of Default in the Lease [Lease Section XVIII.A.6]. A default in the Lease constitutes an Event of Default in the APA [APA Section 10.01(b)]. On November 11, 2023 the Debtor filed the Declaration of Edmund C. King in Support of First Day Motions (the "King Declaration") [Docket No. 22]. The King Declaration makes multiple unsubstantiated allegations against the District in an attempt to blame the District for the Debtor's financial condition. The District will respond at an appropriate time but for purposes of the hearings on November 21, only states that it disagrees it caused the Debtor to be unable to pay its debts as they become due.

2. The Debtor has filed a *Motion Pursuant to 11 U.S.C. § 365(a) for Authority to Assume Unexpired Lease of Nonresidential Real Property* [Docket No. 15] (the "Motion to Assume"), asserting that it is not in default of any provision in the Lease. The District will file a timely response to the Motion to Assume outlining Debtor's multiple defaults. For purposes of the hearing on November 21, however, this Objection identifies some provisions of the APA and the Lease that are relevant to the pending Financing Motion.

3. The District has no objection to the Debtor incurring additional debt as the risk of non-payment falls on the Lender. The District objects to the extent that there is any attempt to grant liens on the Lease or any agreements with the District. The District also objects to the

---

[1] The District has filed copies of the APA and Lease at Docket No. 26.

extent that the Financing Motion seeks to modify, impair or otherwise limit the rights of the District under the APA and/or the Lease. For example, the District objects to the extent that any order approving the Financing Motion would grant rights to certain assets which, upon a default in the Lease, would revert to the District. Similarly, the District objects to the extent that the Financing Motion seeks to grant rights to property owned by the District. By way of example:

(a)    Motor Vehicles – the APA provides that ownership and title to motor vehicles used in the Hospital Operations shall be transferred to the District without further consideration upon Termination of the Lease [APA Section 1.01(m)].

(b)    Records – the APA provides that all documents, books, records, operating and policy manuals, compliance policies and files owned by the District (defined in the APA as "Transferred Records") shall revert to the District without further consideration upon termination of the Lease. [APA Section 1.01(h)].

(c)    Leases – the APA provides that upon termination of the Lease, all Assumed Real Property Leases shall be reassigned to the District.

(d)    Intellectual property - the trademark name "Nacogdoches Memorial Hospital" and any other licenses for intellectual property terminate upon the expiration of the term of the Lease [APA Section 1.05].

(e)    FF&E – the Lease provides that FF&E is leased to the Debtor and all Landlord Replacement Property and Tenant Replacement Property "shall become part of the Leased FF&E" [Lease Sections VIII.H and I].

3

(f)     Pharmacy and Other Regulatory Obligations – The Budget has no provision for remediation costs related to regulatory and operational life and safety issues including, without limitation, those related to the Pharmacy.

4. Any Order granting the Financing Motion should specifically provide that the Debtor and the Lender stipulate the rights of the District are not impaired, limited or otherwise affected in any manner.

5. The Budget attached as Exhibit B to the Financing Motion raises questions regarding future defaults as well as operational issues. By way of example:

(a)     Section VI.B. of the Lease requires that the Debtor, as the Tenant, "shall be solely responsible for and shall promptly pay such taxes or assessments." The Budget makes no provision for payment of any such taxes. Section XVIII.A.3 of the Lease provides that a failure to pay ad valorem taxes is a Monetary Default under the Lease.

(b)     Draws – the Budget assumes availability under the proposed DIP financing to fund the budget items. While the Hospital has authority to operate with over 200 beds, on information and belief, the Debtor has averaged between 25-35 occupied beds (not including new babies). While the number of occupied beds may increase due to the seasonal increase in incidences of flu and other respiratory cases, the ability of the Debtor to increase revenue (particularly net revenue) is limited by the lack of physicians with privileges at the Hospital. On information and belief, the Hospital does not currently have a general surgeon, an orthopedic surgeon or a cardiologist with privileges to operate at the Hospital. The lack of a general or orthopedic surgeon limits the ability to accept trauma

4

patients. The lack of a cardiologist limits the ability to accept patients showing symptoms of heart attacks and similar conditions. The Budget does not appear to include any amounts for additional physicians in such specialties.

(c)     LPPF Funding – the Hospital, like many other medical facilities, is dependent on the additional funds which can be received from governmental funding. Texas requires that such payments are conditioned upon prior deposits into specific funds. The Debtor is a party to an Indigent Care Affiliation Agreement with the District. See Exhibit "A". On information and belief, the Debtor has a payment of $1,087,998.52 due November 26, 2023. See Exhibit "B". The Budget has a provision for payment of only $600,000 during the week of 12/08/23 for "UC/Chirp Fees/LPPF".

(d)     Professional Fees – the Financing Motion refers to a $800,000 "Carve-Out" for Counsel for the Debtor and $200,000 for a Committee and appears to contemplate immediate funding of such amounts. The Budget, however, only includes $400,000 for Legal/Professional.

(e)     Deposits - The Budget is dependent on an apparent return of a $100,000 deposit the week of 12/15/23 followed by a payment of the same amount the next week.

(f)     The Lease requires the Debtor to make at least $1 million each Lease Year in Improvement Expenditures, as defined in Section VIII.L of the Lease. The current Lease Year expires on June 30, 2024. Expenditures for routine operating expenses or maintenance obligations are excluded from the

5

calculation of Improvement Expenditures. The Budget does not appear to provide for any payments which would qualify as "Improvement Expenditures".

6. The District reserves all rights to further object to entry of a final or subsequent interim order.

Dated: November 20, 2023

Respectfully submitted,

**DYKEMA GOSSETT PLLC**
112 E. Pecan St., Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)

By: */s/ Deborah D. Williamson*
Deborah D. Williamson
Texas State Bar No. 21617500
dwilliamson@dykema.com
Patrick L. Huffstickler
Texas State Bar No. 10199250
phuffstickler@dykema.com

and

Alexandria R. Rahn
**DYKEMA GOSSETT PLLC**
1717 Main Street, Suite 4200
Dallas, Texas 75201
(214) 462-6400
(214) 462-6401
arahn@dykema.com

and

Scott C. Skelton
**SKELTON SLUSHER BARNHILL WATKINS WELLS PLLC**
1616 S. Chestnut
Lufkin, Texas 75901
(936) 632-2300
(936) 635-8407
sskelton@ssbww.law

**ATTORNEYS FOR NACOGDOCHES COUNTY HOSPITAL DISTRICT**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system on this 20th day of November, 2023.

*/s/ Deborah D. Williamson*
Deborah D. Williamson

**EXHIBIT A**

# NACOGDOCHES COUNTY HOSPITAL DISTRICT LPPF
## INDIGENT CARE AFFILIATION AGREEMENT

This Indigent Care Affiliation Agreement (the "Agreement") is entered into as of April 25th, 2023 ("Effective Date"), between the Nacogdoches County Hospital District LPPF, a local government entity established under the laws of the State of Texas (the "District"), and Nacogdoches Memorial Hospital (the "Affiliated Hospital"). The Agreement is intended to be several, which means that its terms apply to whichever organizations execute and become a party to the Agreement (each a "Party" or "Parties").

## R E C I T A L S:

**WHEREAS,** the State's under-funding of, and reductions in eligibility for, Medicaid increases the volumes of indigent patients who rely on hospital emergency room services as the source of primary healthcare and shifts the burden for indigent care to the Affiliated Hospital, the District, and local communities;

**WHEREAS,** the District and the Affiliated Hospital recognize that the State will continue to under-fund the Texas Medicaid program and that the indigent numbers in their communities will continue to grow;

**WHEREAS,** the District and the Affiliated Hospital desire to ensure that the indigent have access to and receive quality hospital services;

**WHEREAS,** the District and the Affiliated Hospital recognize that it is in their best interest to increase funding for the Medicaid population and to access federal funding for the indigent to which the Affiliated Hospital will be entitled under the State's Medicaid program; and

**WHEREAS,** the District and the Affiliated Hospital recognize that they need to cooperate to ensure their ability to deliver cost efficient healthcare services to indigent patients in their communities;

**NOW, THEREFORE,** in consideration of the promises and covenants contained in this Agreement, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged and agreed, the Parties agree as follows:

**1.0    INDIGENT CARE COLLABORATION**

    **1.1    Improving Access to Healthcare for Indigent.** The District and the Affiliated Hospital will assess the opportunities to improve access to healthcare for indigent persons residing in the community through participation in the Medicaid program including the Medicaid supplemental payment program implemented by a Section 1115 Waiver.

**2.0 REPRESENTATIONS AND WARRANTIES**

    **2.1 Affiliated Hospital Representations and Warranties.** The Affiliated Hospital represents and warrants that:

        a. They are a Texas corporation or partnership, duly established and created pursuant to applicable law with all requisite power and authority to enter into this Agreement in all respects;

        b. There is no agreement to condition the amount transferred by the District nor the amount of Medicaid supplemental payments on the amount of indigent care the Affiliated Hospital has provided or will provide;

        c. There is no agreement to condition the amount of the Affiliated Hospital's indigent care obligation on the amount transferred by the District nor the amount of any Medicaid supplemental payment the Affiliated Hospital might receive;

        d. No escrow, trust, or other funding mechanism exists, the amount of which is conditioned or contingent on the amount of indigent care services provided or to be provided by the Affiliated Hospital; and that any escrow, trust or other funding mechanism utilized in connection with an anticipated intergovernmental transfer ("IGT") from the District has been disclosed to the Texas Health and Human Services Commission ("HHSC") and is not used to effect a quid pro quo for the provision of indigent care services by or on behalf of the Affiliated Hospital;

        e. The District has not received and will not receive refunds of payments the District made or makes to the Affiliated Hospital for any purpose in consideration for an IGT by the District to fund Medicaid supplemental payments;

        f. The execution, delivery, and performance by the Affiliated Hospital of this Agreement are within the Affiliated Hospital's powers, are not in contravention of any other instruments governing the Affiliated Hospital and have been duly authorized and approved by the Affiliated Hospital as and to the extent required by applicable law;

        g. Neither the Affiliated Hospital, nor any of their representatives are (i) currently excluded, debarred, or otherwise ineligible to participate in the Federal health care programs as defined in 42 U.S.C. § 1320a-7b(f) (the "Federal health care programs"); (ii) convicted of a criminal offense related to the provision of health care items or services but not yet excluded, debarred, or otherwise declared ineligible to participate in the Federal health care programs; or (iii) under investigation or otherwise aware of any circumstances which may result in the exclusion of the Affiliated Hospital, or any of its representatives, from participation in Federal health care programs; and

  h. This Agreement has been duly and validly executed and delivered by the Affiliated Hospital.

2.2 **District Representations and Warranties.** The District represents and warrants that:

  a. It is a unit of local government created under the laws of the State of Texas, duly established and created pursuant to the Texas Constitution with all requisite power and authority to enter into this Agreement in all respects;

  b. There is no agreement to condition the amount transferred by the District nor the amount of Medicaid supplemental payments on the amount of indigent care the Affiliated Hospital has provided or will provide;

  c. There is no agreement to condition the amount of the Affiliated Hospital's indigent care obligation on the amount transferred by the District nor the amount of any Medicaid supplemental payment the Affiliated Hospital might receive;

  d. No escrow, trust, or other funding mechanism exists, the amount of which is conditioned or contingent on the amount of indigent care services provided or to be provided by the Affiliated Hospital; and that any escrow, trust or other funding mechanism utilized in connection with an anticipated IGT from the District has been disclosed to HHSC and is not used to effect a quid pro quo for the provision of indigent care services by or on behalf of the Affiliated Hospital;

  e. The District has not received and will not receive refunds of payments the District made or makes to the Affiliated Hospital for any purpose in consideration for an IGT by the District to fund Medicaid supplemental payments;

  f. The execution, delivery, and performance by the District of this Agreement are within the District's powers, are not in contravention of any other instruments governing the District, and have been duly authorized and approved by the District as and to the extent required by applicable law;

  g. This Agreement has been duly and validly executed by the District; and

  h. The District has public funds available to contribute to the non-federal share of Medicaid payments.

**3.0 OBLIGATIONS OF THE AFFILIATED HOSPITAL**

**3.1 Agreement to Collaborate with the District.** The Affiliated Hospital agrees to work cooperatively with the District to improve access to health care for indigent persons.

**3.2 Compliance with State and Federal Law.** The Affiliated Hospital agrees to retain qualified professionals to ensure health care is provided in compliance with state and federal charity care laws, anti-trust laws, and any other applicable laws, and the Medicare and Medicaid programs.

**3.3 Indigent Care Program Participation.** At all times during the term of this Agreement, the Affiliated Hospital shall use their best efforts to maintain their qualifications for participation in the Medicaid and Medicare programs.

**3.4 Compliance with HIPAA.** To the extent applicable to this Agreement, the Affiliated Hospital agrees to comply with the Health Insurance Portability and Accountability Act of 1996, as codified at 42 U.S.C. Section 1320d, *et seq.* ("HIPAA"), and any current and future regulations promulgated thereunder, including, without limitation, the federal privacy regulations contained in 45 C.F.R. Parts 160 and 164 (the "Federal Privacy Regulations"), the federal security standards contained in 45 C.F.R. Parts 160, 162 and 164 (the "Federal Security Regulations"), and the federal standards for electronic transactions contained in 45 C.F.R. Parts 160 and 162 (the "Federal Electronic Transaction Regulations"), all as amended from time to time, and all collectively referred to herein as "HIPAA Requirements." The Affiliated Hospital agrees not to use or further disclose any Protected Health Information (as defined in the Federal Privacy Regulations) or EPHI (as defined in the Federal Security Regulations), other than as permitted by the HIPAA Requirements and the terms of this Agreement. In addition, the Affiliated Hospital agrees to comply with any state laws and regulations that govern or pertain to the confidentiality, privacy, security of, and electronic transactions pertaining to, health care information.

As and to the extent required by law, upon the written request of the Secretary of Health and Human Services, the Comptroller General or any of their duly authorized representatives, the Affiliated Hospital shall make available those contracts, books, documents and records necessary to verify the nature and extent of the costs of providing services under this Agreement. Such inspection shall be available for up to four (4) years after the rendering of such services. If the Affiliated Hospital carries out any of the duties of this Agreement through a subcontract with a value of $10,000.00 or more over a twelve (12) month period with a related individual or organization, the Affiliated Hospital agrees to include this requirement in any such subcontract. This section is included pursuant to, and is governed by the requirements of, 42 U.S.C. § 1395x(v)(1) and the regulations thereto.

**4.0 OBLIGATIONS OF THE DISTRICT**

    **4.1 Agreement to Cooperate with the Affiliated Hospital.** The District agrees to work cooperatively with the Affiliated Hospital to improve access to health care for indigent persons.

    **4.2 No Condition on Medicaid Funding.** The District agrees that it will not condition the amount to which it funds the non-federal share of Medicaid supplemental payments on a specified or required minimum amount of prospective indigent care.

    **4.3 Documents Publicly Available.** The District agrees to make publicly available any documentation utilized in connection with intergovernmental transfers of funds.

    **4.4 Use of Public Revenue.** To the extent the District decides to provide funding for Medicaid supplemental payments, the District agrees to use public revenue for such funding.

    **4.5 Compliance with HIPAA.** The District agrees to comply with the Health Insurance Portability and Accountability Act of 1996, as codified at 42 U.S.C. Section 1320d, *et seq.* ("HIPAA"), and any current and future regulations promulgated thereunder, including, without limitation, the federal privacy regulations contained in 45 C.F.R. Parts 160 and 164 (the "Federal Privacy Regulations"), the federal security standards contained in 45 C.F.R. Parts 160, 162 and 164 (the "Federal Security Regulations"), and the federal standards for electronic transactions contained in 45 C.F.R. Parts 160 and 162 (the "Federal Electronic Transaction Regulations"), all as amended from time to time, and all collectively referred to herein as "HIPAA Requirements." The District agrees not to use or further disclose any Protected Health Information (as defined in the Federal Privacy Regulations) or EPHI (as defined in the Federal Security Regulations), other than as permitted by the HIPAA Requirements and the terms of this Agreement. In addition, the District agrees to comply with any state laws and regulations that govern or pertain to the confidentiality, privacy, security of, and electronic transactions pertaining to, health care information.

        As and to the extent required by law, upon the written request of the Secretary of Health and Human Services, the Comptroller General or any of their duly authorized representatives, the District shall make available those contracts, books, documents and records necessary to verify the nature and extent of the costs of providing services under this Agreement. Such inspection shall be available for up to four (4) years after the rendering of such services.

**5.0 GENERAL PROVISIONS**

    **5.1 Term and Termination.** The term of this Agreement shall be one year from the Effective Date and shall automatically continue thereafter for additional terms of one year unless the Parties agree otherwise; provided however, that this

Agreement shall terminate immediately upon written notice by either the District or the Affiliated Hospital to the other party.

5.2 **Notices.** All notices required or permitted hereunder shall be in writing and shall be sufficiently given and deemed to have been received upon personal delivery, by overnight carrier, by email, or by United States mail, postage prepaid, registered or certified mail, addressed to the Parties as follows:

<u>District:</u> Nacogdoches County Hospital District
1018 N. Mound Street, Suite 105
Nacogdoches, Texas 75961
Attention: Lynn Lindsey

<u>Affiliated Hospital:</u> Nacogdoches Memorial Hospital
1204 Mound St.
Nacogdoches, TX 75961
Attention: Sean Fowler

<u>With a Copy to:</u> Gjerset & Lorenz, LLP
2801 Via Fortuna, Suite 500
Austin, Texas 78746
Attention: Todd Ramberg

5.3 **Relationships between the Parties.** The relationship between the District and the Affiliated Hospital is solely a contractual relationship between independent contractors. No party hereto is an agent or employee of any other party. Nothing in this Agreement shall prevent any affiliation or contracting by any party with any third party, with the exception that no party may contract or affiliate with another party to gain entitlement to Medicaid supplemental payments pursuant to this Agreement.

5.4 **Governing Law.** This Agreement shall be governed by the laws of the State of Texas. The Affiliated Hospital understands that the District is a political subdivision of the State of Texas and governed by certain statutes applicable thereto.

5.5 **Assignment.** No party may assign any right, obligation, or responsibility under this Agreement except to a successor in interest.

5.6 **No Third Party Beneficiary.** The Parties to this Agreement do not intend to establish any third party beneficiary relationships by virtue of this Agreement.

IN WITNESS WHEREOF, the Parties have hereunto set their hand as of the date set forth above.

**DISTRICT**:      NACOGDOCHES COUNTY HOSPITAL DISTRICT

By _[signature] Lynn Lindsey_

Title _Administrator_

**AFFILIATED HOSPITAL**:      NACOGDOCHES MEMORIAL HOSPITAL

By _[signature]_

Title _CEO_

#235048

**EXHIBIT B**

## NACOGDOCHES COUNTY HOSPITAL DISTRICT LOCAL PROVIDER PARTICIPATION FUND

### 2024 FISCAL YEAR

### SECOND INSTALLMENT

**THIS IS YOUR STATEMENT**  **KEEP THIS COPY FOR YOUR RECORDS**

Statement date: 10/27/2023

**Payer**
Lion Star Nacogdoches Hospital d/b/a Nacogdoches Memorial Hospital
1204 N Mound St.
Nacogdoches, TX 75961

| 2024 FY Payment | NET REVENUE | Rate | AMOUNT DUE |
|---|---|---|---|
| | $54,399,926.00 * | 2.0% | $1,087,998.52 |

*as reported in the 2022 Medicare Cost Report.

**Pay this Amount:** $1,087,998.52

**Due Date:** 30 calendar days following the date of receipt of this notice

**Payment Instructions:**

Bank: Southside Bank
Account Name: Nacogdoches County Hospital District Local Provider Participation Fund
Routing Number: 111923607
    For further credit to
Account Number: 1█████96

**For questions concerning this statement contact:**

Lisa King, District President
Nacogdoches County Hospital District
1018 N Mound St, Suite 105, Nacogdoches, TX 75961
(936) 221-5809